OCT 25 2023 PM 1:00
FILED - USDC - FLMD - ORL

AF Approval ___NA___                          Chief Approval ___CB___

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 6:23-cr- 206 - WWB - RMN

KENNETH CHRYSOSTOME

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the Criminal Division, Fraud Section, the defendant, Kenneth Chrysostome, and the attorney for the defendant, Joseph E. Nascimento, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    <u>Count Pleading To</u>

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

    2.    <u>Maximum Penalties</u>

Count One carries a maximum sentence of 10 years' imprisonment, a fine of $250,000 or twice the pecuniary gain or loss, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order

Defendant's Initials K.C

the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the Information; and

Second:    the defendant knew the unlawful purpose of the plan and willfully joined in it.

4.    Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    Exclusion from Federal Health Care Programs

The defendant understands and acknowledge that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete and execute all necessary documents provided by and department or agency of the federal government, including but not limited to the United States Department of Health and Human Services to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect defendant's right to apply for and receive benefits as a

2

Defendant's Initials Y.C

beneficiary under any Federal health care program, including Medicare and Medicaid.

     6.    <u>No Further Charges</u>

        If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and Fraud Section of the United States Department of Justice agree not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office for the Middle District of Florida or Fraud Section of the United States Department of Justice at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

     7.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

        Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Medicare Program and any other victims as determined by the Court.

     8.    <u>Joint Offense Level Recommendations</u>

        Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

          a.  The defendant's base offense level is six (6), in accordance with Section 2B1.1(a)(2) of the Sentencing Guidelines;

3

Defendant's Initials _K. C_

b.  The defendant's offense level shall be increased by eighteen (18) levels pursuant to Section 2B1.1(b)(1)(J) of the Sentencing Guidelines because the intended loss to Medicare was more than $3,500,000 but less than $9,500,000;

c.  The defendant's offense level shall be increased by three (3) levels pursuant to Section 2B1.1(b)(7) of the Sentencing Guidelines because the offense constituted a federal health care offense involving a Government health care program, and the loss amount to the Government health care program was more than $7,000,000 but less than $20,000,000;

d.  The defendant's offense level shall be increased by two (2) levels pursuant to Section 2B1.1(b)(10)(C) of the Sentencing Guidelines because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; and

e.  The defendant's offense level shall be increased by three (3) levels pursuant to Section 3B1.1 of the Sentencing Guidelines because the defendant was a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive.

The parties understand and agree that the United States may assert at sentencing and recommend to U.S. Probation that additional enhancements beyond

Defendant's Initials  K C

4

the Sentencing Guidelines set forth above apply and that Defendant may argue that those additional enhancements do not apply.

The parties understand that such recommendations are not binding on the Court and that, if one or more of the recommendations are not accepted by the Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.    Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a

5

Defendant's Initials  K.C

downward adjustment of a third level for acceptance of responsibility rests solely with the United States, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      10.    <u>Low End</u>

      At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

      11.    <u>Cooperation—Substantial Assistance to be Considered</u>

      The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United

Defendant's Initials _KC_

6

States, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    12.    <u>Use of Information—Section 1B1.8</u>

        Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

    13.    <u>Cooperation - Responsibilities of Parties</u>

        The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating

7

Defendant's Initials K.C

circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury,

8

Defendant's Initials _K.C_

and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

9

Defendant's Initials K.C

14.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7) and 21 U.S.C. § 853(a), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the at least $3,870,411 in proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction, which includes, but is not limited to, the following property: 1) the real property located at 3155 Tindall Acres Rd., Kissimmee, FL 34744 titled in the name of Kenneth Chrysostome; 2) the real property located at 1172 South Beach Cir Kissimmee, FL 34746 titled in the name of Kenneth Chrysostome; and 3) a 2020 Tesla Model X VIN#: 5YJXCBE28LF243430 titled in the name of Kenneth Chrysostome.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the

10

Defendant's Initials ⫽.C

offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is

11

Defendant's Initials _K.C_

omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

12

Defendant's Initials K.C.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to

13

Defendant's Initials _K. C._

all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

14

Defendant's Initials _K.C_

4.     Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.     Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five

15

Defendant's Initials _L.C_

years. The defendant similarly agrees and authorizes the United States to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to

16

Defendant's Initials _K.C_

the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the Criminal Division, Fraud Section, and cannot bind other federal, state, or local prosecuting authorities,

Defendant's Initials K.C

although the United States will bring defendant's cooperation, if any, to the attention

of other prosecuting officers or others, if requested.

9.      Filing of Agreement

This agreement shall be presented to the Court, in open court or <u>in</u>

<u>camera</u>, in whole or in part, upon a showing of good cause, and filed in this case, at

the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion

of any kind. The defendant further acknowledges defendant's understanding of the

nature of the offense or offenses to which defendant is pleading guilty and the

elements thereof, including the penalties provided by law, and defendant's complete

satisfaction with the representation and advice received from defendant's

undersigned counsel (if any). The defendant also understands that defendant has the

right to plead not guilty or to persist in that plea if it has already been made, and that

defendant has the right to be tried by a jury with the assistance of counsel, the right

to confront and cross-examine the witnesses against defendant, the right against

compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

18

Defendant's Initials _____

defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____

19

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 1st day of June 2023.

ROGER B. HANDBERG
United States Attorney

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

_____
Kenneth Chrysostome
Defendant

_____
Meredith Hough
Fraud Section, Criminal Division
U.S. Department of Justice

_____
Joseph E. Nascimento, Esq.
Attorney for Defendant

Defendant's Initials _K. C_

20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                  CASE NO. 6:23-cr-

KENNETH CHRYSOSTOME

## PERSONALIZATION OF ELEMENTS

As to 18 U.S.C. § 1349, Conspiracy to Commit Health Care Fraud:

(1)    Did two or more persons, in some way or manner, agree to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the Information?

(2)    Did you know the unlawful purpose of the plan and willfully join in it?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 6:23-cr-

KENNETH CHRYSOSTOME

### FACTUAL BASIS

Beginning in or around May 2021, and continuing through in or around March 2023, in the Middle District of Florida and elsewhere, the defendant, Kenneth Chrysostome ("the defendant" or "Chrysostome"), knowingly and willfully combined, conspired, confederated, and agreed with others, in violation of Title 18, United States Code, Section 1349, to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit programs, in connection with the delivery of and payment for healthcare benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

*The Medicare Program*

The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the

Defendant's Initials 

22

elderly, blind, and disabled. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

Medicare was a "health care benefit program" of the United States, as defined by 18 U.S.C. § 24, and affects commerce.

Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part B" covered non-institutional care that included physician services and supplies, such as, but not limited to, durable medical equipment ("DME") that is needed to diagnose or treat medical conditions and that meet accepted standards of medical practice.

*Durable Medical Equipment Claims Submitted under Medicare Part B*

DME was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces"). Medicare reimbursed DME providers and other health care providers for medically necessary items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and

23

Defendant's Initials _L.C_

regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

*The Scheme*

Chrysostome was a resident of the Middle District of Florida who owned and controlled KC Med Supplies LLC ("KC Med") and Bayview Medical Supply LLC ("Bayview"). KC Med and Bayview were located in Orange County in the Middle District of Florida. KC Med and Bayview were DME supply companies.

Chrysostome purchased Medicare beneficiaries' information from third-party call centers and others. Chrysostome offered and paid illegal kickbacks and bribes to his co-conspirators in exchange for signed doctor's orders for orthotic braces. Chrysostome and his co-conspirators disguised the nature of the kickbacks and bribes by creating and causing to be created sham invoices that falsely identified the payments as being made for Google advertisements. Chrysostome knew that his co-conspirators utilized health care providers to prescribe orthotic braces for Medicare beneficiaries regardless of medical necessity, without any preexisting relationship with the Medicare beneficiaries, and without conducting a physical examination of the Medicare beneficiaries. Chrysostome knew that the orthotic braces being prescribed were medically unnecessary, but he nevertheless submitted and caused to be submitted claims to Medicare for the orthotic braces.

From in or around November 2021 through in or around March 2023, Chrysostome and his co-conspirators, through KC Med, submitted and caused to be submitted to Medicare approximately $7,668,951 in false and fraudulent claims for

24

Defendant's Initials _K C_

orthotic braces that were not medically necessary and that were prescribed as a result of the payment of kickbacks and bribes. Medicare paid KC Med approximately $2,915,055 on those false and fraudulent claims. From in or around July 2022 through in or around March 2023, Chrysostome and his co-conspirators, through Bayview, submitted and caused to be submitted to Medicare approximately $1,782,656 in false and fraudulent claims for orthotic braces that were not medically necessary and that were prescribed as a result of the payment of kickbacks and bribes. Medicare paid Bayview approximately $955,356 on those false and fraudulent claims.

From in or around November 2021 through in or around March 2023, Chrysostome paid at least $2,265,936 in illegal kickbacks and bribes in exchange for signed doctor's orders for orthotic braces that were medically unnecessary and ineligible for reimbursement by Medicare.

Defendant's Initials _K. C_